889 P.2d 633

### In re the Marriage of Deborah POLLOCK aka Deborah Kay, Petitioner–Appellant,

v.

### Ronald M. POLLOCK, Respondent–Appellee.

No. 1 CA–CV 94–0133.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 7, 1995.

* The Honorable Levi Ray Haire, retired judge of the Arizona Court of Appeals, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to the Arizona Constitution, article VI, section 20, and Ariz.Rev.Stat.Ann. section 38–813.

Law Offices of Paul Lenkowsky by Tina M. Ezzell, Bullhead City, for petitioner-appellant.

Robert M. Bula, Kingman, for respondent-appellee.

**OPINION**

KLEINSCHMIDT, Presiding Judge.

This case presents questions as to when and under what circumstances a parent who has custody of a child may permanently leave the state with the child when the move will affect the noncustodial parent's visitation rights. Division Two of this court addressed a similar question in *Bloss v. Bloss*, 147 Ariz. 524, 711 P.2d 663 (App.1985). We agree with *Bloss* in almost every respect, but we consider some factors raised by the Appellant in this case that were not discussed in *Bloss*.

The Mother and Father, who are the opposing parties in this case, were divorced in 1991. The Mother was granted sole custody of their daughter, who is now eight years old. The Father's visitation rights were never

spelled out in detail, but through informal agreement and custom, he sees his child at least two days a week.

The Mother has remarried, and she wants to move to New Hampshire with her new husband and take the child with her. When the Father learned that the Mother was going to move, he procured a temporary injunction from the trial court. The evidence presented at the hearing on whether to make the injunction permanent was as follows. The Mother and her new husband live in the Bullhead City area, and both are unemployed. The new husband has been offered an interest in a welding business in New England, but the business is dormant, and the new husband has no formal training as a welder and does not purport to have much interest in going into that kind of work. The new husband, however, was raised in New England, and most of his family live there and are willing to help him and his new family settle there. The Mother believes that her daughter will benefit from a more sylvan environment and one which is free from the gambling influence that is present in the Bullhead City area. The Mother also believes that the schools in New Hampshire will better serve her daughter's needs.

The Father lives in the Bullhead City area and works as a bellman at a hotel in Laughlin, Nevada. There is a suggestion in the record that he may move elsewhere. The Father has a close relationship with his daughter. It is not realistic to believe that the resources of the parties will be sufficient to send the child back and forth between New Hampshire and Arizona very often.

The trial court permanently enjoined the Mother from moving out of the state with the child. The Mother asks us to dissolve the injunction. She presents the case as involving no less than seventeen different issues, many of which were not raised in the trial court. Most of these issues boil down to whether the test enunciated in *Bloss v. Bloss* is sound, and if so, whether the trial court abused its discretion in applying that test to the facts of this case.

■ The competing rights at the heart of this case are the Mother's right to travel and the Father's right to maintain a meaningful relationship with his child. These rights must be adjusted in accordance with the best interests of the child. *Bloss,* 147 Ariz. at 525, 711 P.2d at 664.

■ We first consider which party has the burden of proving what is in the child's best interests. Courts have treated this question in a variety of ways.[1] We believe that the burden of proof in cases like this should be on the custodial parent who is seeking to move and take the child to another locale. This is consistent with *Bloss* and other Arizona law which places the burden of proof on the party seeking to modify custody or visitation. *Pridgeon v. Superior Court,* 134 Ariz. 177, 181, 655 P.2d 1, 5 (1982); *Marley v. Spaulding,* 10 Ariz.App. 213, 215, 457 P.2d 753, 755 (1969); *Schulze v. Schulze,* 79 Ariz. 86, 88, 284 P.2d 457, 459 (1955). It is worth saying in this regard, however, that we agree with what the Supreme Judicial Court of Massachusetts said in *Yannas v. Frondistou–Yannas,* 395 Mass. 704, 481 N.E.2d 1153, 1158 (Mass.1985), when it observed that the interests of the parties and the child are best safeguarded by clear and careful fact finding, rather than heightened burdens of proof or the inequitable application of constitutional rights for or against one party or the other.

1. Some courts place the burden on the custodial parent. *In re Marriage of Murphy,* 834 P.2d 1287, 1291 (Colo.App.1992), *disapproved on other grounds by, In re Marriage of Wall,* 868 P.2d 387, 394 (Colo.1994); *In re Marriage of Gratz,* 193 Ill.App.3d 142, 139 Ill.Dec. 611, 612–14, 548 N.E.2d 1325, 1326–28 (1989); *Schelldorf v. Schelldorf,* 568 So.2d 168, 171 (La.App.1990). In New Mexico, when the parents have joint custody the party seeking to move has the burden of proof. If one person has custody, neither party has the burden of proof. *Jaramillo v. Jaramillo,* 113 N.M. 57, 65, 823 P.2d 299, 307

(1991). In still other jurisdictions, the burden of showing what is in the child's best interests is on the noncustodial parent. *Lane v. Schenck,* 158 Vt. 489, 614 A.2d 786, 792 (1992); *Geiger v. Geiger,* 470 N.W.2d 704, 706 (Minn.App.1991); *see also Mize v. Mize,* 621 So.2d 417, 419 (Fla. 1993) (presuming custodial parent's and child's best interests coincide, and that a good faith desire to move should ordinarily be allowed); *Love v. Love,* 851 P.2d 1283, 1287 (Wyo.1993) (good faith decisions of custodial parent presumed to be in best interest of child).

We turn to the factors which the trial court should take into consideration in deciding what is in the best interests of the child when one parent wants to move to a new location. In the main, we take these factors from *Bloss*, although the court in that case noted that its list of considerations was not necessarily all inclusive. *Bloss*, 147 Ariz. at 526, 711 P.2d at 665. It is important to say that no single factor is controlling and that all of them should be weighed collectively. *See Yannas v. Frondistou–Yannas*, 481 N.E.2d at 1158. A very important factor is whether the request to move is made in good faith and not simply to frustrate the other parent's right to maintain contact with the child. *See Holder v. Polanski*, 111 N.J. 344, 544 A.2d 852, 856 (1988). Another factor is the prospective advantage of the move for improving the general quality of life for the custodial parent and the child. *Bloss*, 147 Ariz. at 526, 711 P.2d at 665. While, as we discuss in more detail below, proof of a "real advantage" to the move is not a *sine qua non* for allowing it, naturally the more advantages that will ensue from a move, the heavier the weight in favor thereof. A trial court should also consider the likelihood that the custodial parent will comply with modified visitation orders when that parent is beyond the jurisdiction of the court. *Id.* It should consider whether the move will allow a realistic opportunity for visitation for the noncustodial parent, *id.*, and if not, the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent. *Yannas*, 481 N.E.2d at 1158. The court should also take into account the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child. *Id.* The court must also assess the integrity of the noncustodial parent's motives in resisting the move and consider the extent to which, if at all, the opposition is intended to secure a financial advantage in respect to continuing support obligations. *Bloss*, 147 Ariz. at 526, 711 P.2d at 665.

The Mother's strongest argument is the contention that the legal authority upon which *Bloss* is based has changed in a way that undercuts *Bloss*. *Bloss* relied on the decision of an intermediate appellate court in New Jersey in the case of *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27 (N.J.Super. Ch. 1976), which was approved by the New Jersey Supreme Court in *Cooper v. Cooper*, 99 N.J. 42, 491 A.2d 606 (1984), which held that a custodial parent who wanted to move had to show a "real advantage" to the move. Subsequently, in *Holder v. Polanski*, the Supreme Court of New Jersey modified that rule and said:

> To this extent, we modify the "cause" test that we announced in *Cooper* by holding that any sincere, good-faith reason will suffice, and that a custodial parent need not establish a "real advantage" from the move.

544 A.2d at 856.

The Mother, relying heavily on other language from *Holder*, says that since the court found that she has a good faith reason for moving, the focus should have been on whether the child will be harmed by the move, not on whether a custodial parent will benefit from it. We do not agree that *Holder* need be read as the Mother interprets it, but to the degree that it can be so read, we decline to follow it. We do, however, agree with the observation in *Holder* that it is not a prerequisite for the custodial parent who wants to move to show that the move will result in a "real advantage" for the custodial parent and child. The prospective advantage to the move is only one, among the many factors we have set out above, for the court to consider.

The problem then becomes, as the Mother phrases it in her brief:

> It appears the trial court in this case assumed the *Bloss v. Bloss* Court intended to place the burden upon the *custodial* parent to prove that a proposed move is "likely to improve the general quality of life for both the custodial parent and the children." *Bloss v. Bloss*, 147 Ariz. at 526, 711 P.2d at 665. If the trial court is correct, this is a heavy burden indeed.

In light of our conclusion that it is not necessary for a custodial parent who seeks to move to show a "real advantage" to the move, we have searched the record to determine whether the trial judge might have

placed too much emphasis on that factor in reaching his decision. Among other things, he said:

> From the child's standpoint, I don't see that the move is advantageous to her. It will disrupt the relationship between her and her father. You know, fine, she gets snow and she gets trees and lakes, and I realize that Bullhead City is not noted for its snow ... that's about all I see as an advantage for the child.

While this case was carefully handled by the trial judge, we cannot be sure from the record that he did not place too much emphasis on the lack of prospective advantage from the move. For that reason, we remand with instructions to rehear the matter in accord with this opinion. Nothing in this opinion is to be construed to foreordain the decision the trial judge is to reach.

Our decision to remand is bolstered by the fact that the Mother's proposed move is in the nature of a motion to modify visitation and that it has been over a year since the hearing was held on this matter in the trial court. Pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 25–337(B), she is entitled to seek a modification of visitation if such will serve the best interests of the child.

 We have reviewed all of the Mother's other arguments, many of which, as we have already observed, were not raised in the trial court. Of these arguments which are not otherwise expressly resolved in this opinion, it is enough to say that we reject the Mother's contention that *Bloss* ought not apply to this case because the Father's visitation rights were informally established. We believe that the State of Arizona has a sufficiently compelling interest in family relations to make the ruling appropriate, we do not believe *Bloss* is unduly restrictive and therefore an unconstitutional means to serve the state's interest, and we do not believe *Bloss* is irreconcilable with our statutory scheme for determining child custody and visitation. We also believe that if a parent seeks to remove a child from the state and that such move may adversely affect the other parent's

visitation rights a hearing should be held to resolve the issue. We have reviewed the evidence adduced at the hearing with an eye toward every issue and, except as noted above, we find nothing in any of the Mother's additional arguments which would give grounds to reverse the trial judge's decision.

 The Father requests attorney's fees on the grounds that the Mother's appeal is frivolous and also pursuant to A.R.S. section 25–324. The appeal is not frivolous, and because the record reveals that the parties are in similar financial circumstances, in the exercise of our discretion, we decline to award fees to either party. This case is remanded for rehearing.

NOYES and KAUFMAN,[2] JJ., concur.

---

**2.** The Honorable Roger W. Kaufman, Judge of the Superior Court of Maricopa County, was authorized by the Chief Justice of the Arizona

Supreme Court to participate in this appeal pursuant to Ariz. Const. art. VI, § 3.