NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

YURI ARTEMCHUK, *Petitioner/Appellant*,

*v.*

OLENA CHERNYSH, *Respondent/Appellee.*

No. 1 CA-CV 15-0628 FC
FILED 7-21-2016

Appeal from the Superior Court in Maricopa County
No. FC2013-003574
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Gregg R. Woodnick PLLC, Phoenix, AZ
By Leslie A. W. Satterlee
*Co-Counsel for Petitioner/Appellant*

Melinda K. Cekander PLLC, Heron, MT
By Melinda K. Cekander
*Co-Counsel for Petitioner/Appellant*

Rebecca L. Owen PLLC, Phoenix, AZ
By Rebecca L. Owen
*Co-Counsel for Respondent/Appellee*

The Murray Law Offices, P.C., Scottsdale, AZ
By Stanley D. Murray
*Co-Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Kent E. Cattani joined.

---

**H O W E**, Judge:

**¶1**        Yuri Artemchuk ("Father") challenges the family court's order approving Olena Chernysh's ("Mother's") relocation to Michigan with their minor daughter ("the child") and modifying their parenting schedule in light of the relocation. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Mother and Father were divorced in 2013. The divorce decree granted them joint legal decision-making authority for their daughter and named Mother as the child's primary residential parent. The decree also incorporated a "Parenting Plan Agreement" with detailed provisions governing future relocations by either parent. The Plan provided that "[n]either parent shall remove the child from the State of Arizona without the written consent of the other party or order of the court." It also provided that if either parent decided to relocate outside Arizona, that parent must "notify the other in writing by certified mail at least ninety (90) days prior to the date of departure."

**¶3**        The Plan further provided that if the parents could not agree on a new parenting schedule, they must try to reach an agreement "with the assistance of Conciliation Court or a private counselor." But if no agreement could be reached, either parent could "file a decision-making proceeding in a court of competent jurisdiction." In any case, if the non-relocating parent still resided in Arizona, the child must "remain with the non-moving parent, until such time as a written agreement is reached or court order is entered concerning decision-making."

2

¶4 In May 2014, Mother sent Father a certified letter stating her desire to relocate with the child to Michigan. The certified letter went unclaimed. Mother then had the letter personally served on Father in June 2014. Having received no response, Mother and the child relocated to Michigan in September 2014. Mother's counsel then wrote Father a letter inviting him to "discuss parenting time or mediation."

¶5 Meanwhile, Father filed three petitions in family court asking the court to hold Mother in contempt for violating the Parenting Plan. Father later filed an amended petition seeking, among other things, sole custody of the child. Mother then petitioned to modify the parenting schedule and child support in light of the relocation. In January 2015, Father requested that the child be returned to Arizona pursuant to the Parenting Plan. The family court denied Father's request because it had not yet heard any evidence whether Mother violated the Parenting Plan.

¶6 The family court resolved the parties' competing petitions in two evidentiary hearings. At the first hearing in February 2015, the court addressed Father's contention that Mother did not give him proper notice of her intent to relocate under the Parenting Plan. The court found that Mother properly served Father. During this hearing, Father again requested that the child be returned to Arizona. The court denied the request, however, finding that it was not in the child's best interests to be away from Mother for the two weeks between the date of Father's request and the end date of the relocation hearing.

¶7 At the second hearing in May 2015 (the "relocation hearing"), the family court addressed whether Mother's relocation violated the Parenting Plan and whether relocation was in the child's best interests. The court found that although Mother had "willfully" violated the Plan, under the relocation factors listed in A.R.S. §§ 25–403(A) and 25–408(I), Mother had met her burden of showing that moving to Michigan with the child was in the child's best interests. The court thus granted Mother's request to relocate the child to Michigan. The court also found that Father should be given "meaningful and substantial parenting time" and implemented a long distance parenting schedule and increased Father's child support obligation. Father timely appealed.

## DISCUSSION

### 1. The Relocation Request

¶8 Father first contends that the family court erred in finding that relocation was in the child's best interests. In assessing a relocation request,

the family court must consider the child's best interests by using the relevant factors listed in A.R.S. § 25–408(I) and § 25–403(A). A.R.S. § 25–408(G), (I); *Owen v. Blackhawk,* 206 Ariz. 418, 420–21 ¶¶ 8–12, 79 P.3d 667, 669–70 (App. 2003). In cases where the factors are divided, we do not reweigh conflicting evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16, 219 P.3d 258, 262 (App. 2009). Instead, we review the decision for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 176 ¶ 5, 367 P.3d 78, 80 (App. 2016). In doing so, we view the evidence in the light most favorable to sustaining the family court's findings and will sustain those findings if any reasonable evidence supports them. *Johnson v. Johnson*, 131 Ariz. 38, 44, 638 P.2d 705, 711 (1981). The parent seeking relocation bears the burden of proof. A.R.S. § 25–408(G); *Pollock v. Pollock*, 181 Ariz. 275, 277, 889 P.2d 633, 635 (App. 1995). Because the evidence supports the family court's relocation order, the court did not abuse its discretion.

¶9        Here, the family court's detailed decision reflects the court's consideration of the statutory factors and that it did not unduly focus on any one factor to the exclusion of others. *See id.* at 278, 889 P.2d at 636 (stating that the best interest factors "should be weighed collectively"). The record shows that several factors weighed against relocation. One factor is that Mother had "removed [the child] from Arizona contrary to the Parenting Plan," indicating to the family court that Mother was less likely to allow frequent, meaningful, and continuing contact with Father. A.R.S. § 25–403(A)(6). Other factors are that relocation would "in some ways make[] Father's parenting time more difficult" and that it was "too early to say how well [the child] has or has not adjusted" to the Russian community in Michigan. A.R.S. §§ 25–403(A)(2); 25–408(I)(5). A final factor is that the child was "always happy to see Father when he has been able to exercise parenting time." A.R.S. § 25–408(I)(6).

¶10        But the record shows that more factors weighed in favor of relocation. One factor is that Mother relocated "in good faith . . . [and] not to frustrate the relationship between Father and child." A.R.S. § 25–408(I)(2). Three other factors are that the child "ha[d] spent the majority of her life in the care of Mother," that the child had adjusted to living in Michigan, and that both parents "appear to have the financial resources to allow travel so that Father is able to establish and maintain a reasonable long distance parenting time schedule." A.R.S. § 25–408(I)(5), (6). Two final factors are that the child would have a stable home in Michigan and that relocation would be advantageous for Mother because "she would be with her new husband where he lives and works and where she also can work." A.R.S. § 25–408(I)(2), (8). The family court also found that Mother would comply with parenting time orders going forward and

noted that she had "made [the child] available to Father on several occasions." A.R.S. § 25–408(I)(4). Consequently, because the record supports the family court's order for relocation, the court did not abuse its discretion in approving Mother's relocation request.

**¶11** Although Father challenges each of the court's findings, he largely does so by ignoring testimony that supports each finding while emphasizing testimony favorable to his positions. Selective citation to the record does not establish an abuse of discretion, however. *See Hurd*, 223 Ariz. at 52 ¶ 19, 219 P.3d at 262 (stating that an abuse of discretion occurs only "when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision").

**¶12** Father concedes that relocation was advantageous for Mother, but nonetheless argues that the family court "failed to identify anything to support its conclusion that there was some greater advantage to the child in Michigan." The record shows that the family court did not reach that conclusion, and the relevant statutes do not require the court to reach such a conclusion. *See* A.R.S. § 25–408(I)(3) (family court must consider "[t]he prospective advantage of the move for improving the general quality of life for the custodial parent or for the child").

### 2. The Parenting Plan

**¶13** Father also contends that the family court should have ordered Mother to return the child to Arizona before the relocation hearing as the Parenting Plan required. Father cites A.R.S. § 25–408(H), which bars the family court from "deviat[ing] from a provision of any parenting plan or other written agreement by which the parents specifically have agreed to allow or prohibit relocation of the child unless the court finds that the provision is no longer in the child's best interests." Section 25–408(H) creates a rebuttable presumption that such provisions are in the child's best interests. Father therefore contends that Mother never overcame this rebuttable presumption and that the family court should not have "moved on to the relocation issue" without ordering the child's return.

**¶14** Here, Father's argument regarding returning the child pursuant to the Parenting Plan is moot. We may decline to address issues raised on appeal if facts show that they are or have become moot. *In re Henry's Estate*, 6 Ariz. App. 183, 188, 430 P.2d 937, 942 (1967). An issue becomes moot when an event occurs that would cause our decision to have no practical effect. *Sedona Private Prop. Owners Ass'n v. City of Sedona*, 192

Ariz. 126, 127 ¶ 5, 961 P.2d 1074, 1075 (App. 1998). The Parenting Plan provided that the child should remain in Arizona only "until such time as a written agreement is reached or court order is entered concerning decision-making." On appeal, the relocation hearing had already taken place and the family court had approved the child's relocation. The Plan therefore no longer affords Father any practical remedies. Had Father sought special action relief when the family court denied his requests, perhaps this issue would have been ripe for review. But as it stands, Father's attempt to enforce this Plan provision is moot. *See Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App. 1985) ("A case is moot when it seeks to determine an abstract question which does not arise upon existing facts or rights."). Consequently, because the Parenting Plan no longer affords Father any meaningful relief, his argument is moot.

### 3. Modification of the Parenting Schedule

¶15        Father contends in the alternative that the family court did not grant him sufficient parenting time in the modified parenting schedule. We review a parenting schedule for an abuse of discretion. *Armer v. Armer*, 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970). The non-custodial parent is entitled to reasonable parenting time, unless it would endanger the child's physical, mental, moral, or emotional health. A.R.S. § 25–403.01(D). Here, the family court found no such issues, but instead found that Father had "been involved with [the child] on a regular basis" and had "not neglected [the child] or his paternal duties."

¶16        Father argues nonetheless that the family court ruled "that he should be given significant parenting time, as well as extra parenting time to make-up [sic] for the time he lost when Mother moved to Michigan with the child," but did not give him the parenting time he deserved. Father offers no evidence suggesting that the family court ignored its own findings in modifying the parenting schedule, however. He also does not show that the parenting time he received was unreasonable given that the child now resides in Michigan.

¶17        Father further contends that Mother "suffered no consequence as a result of willfully violating the court order by relocating with [the child]," and on that basis asks this Court to remand "with instructions to increase Father's parenting time." But Father cites no authority suggesting that a parent's violations of a past agreement must be punished when modifying a parenting schedule. *See* A.R.S. § 25–403.02(B) (provided that the family court must adopt a parenting plan that is

"[c]onsistent with the child's best interests"); A.R.S. § 25–411(J) ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interest of the child."). Nonetheless, the record shows that the family court considered Mother's Parenting Plan violation in determining the parenting schedule. Consequently, the family court did not abuse its discretion in setting Father and Mother's parenting schedule.

### 4. Attorney's Fees and Costs

¶18        Mother requests attorney's fees pursuant to A.R.S. § 25–324(A), under which we consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." Having reviewed the record, we decline to award attorney's fees to either party. *See Kent v. Carter-Kent*, 235 Ariz. 309, 314 ¶ 25, 332 P.3d 56, 61 (App. 2014). But as the prevailing party, we award Mother her costs incurred on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

¶19        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: AA