SWANN, Judge:
*9 ¶ 1 In this family-law case, the superior court was asked to establish a primary residence for a child who had previously shared time equally with parents in two different states on a biweekly basis. The parties presented the issue as one of parenting-time reconfiguration and school choice, and the court adopted that view. We hold that the issue was actually one of relocation affecting parenting time. We remand so that the parties may file appropriate pleadings to permit the court to make all required findings regarding the relocation question under A.R.S. § 25-408, and so that the parties may, if they wish, properly raise the question of a modification of legal decision-making authority.
FACTS AND PROCEDURAL HISTORY
¶ 2 Austin J. Berrier, Jr., ("Father") and Stacy Luree Rountree ("Mother") are the divorced parents of a young child ("Child"). Father has lived in Goodyear, Arizona, and Mother in Irvine, California, since at least the time of the decree of dissolution in 2014.
¶ 3 The decree incorporated the parties' agreements regarding legal decision-making authority and parenting time. With respect to legal decision-making authority, the decree ordered that the parties would share "joint legal decision-making authority regarding [Child]," with Mother having "presumptive decision-making authority as defined in [psychologist] Dr. Yee's [comprehensive family evaluation] report dated November 18, 2014 (at page 9)." Dr. Yee's report stated:
The presumptive decision-making authority would permit [Mother] to make preliminary decisions after conferring with [Father]. If [Father] believes that [Mother]'s decision is contrary to the best interests of the child, he would have the right to seek review through the Court. [Father] would have the burden to demonstrate that [Mother]'s decision is contrary to the child's best interest. It would not be sufficient to demonstrate that an alternative decision might also be in the best interest of the child.
With respect to parenting time, the decree ordered that the parties would "exercise a two (2) week on/two (2) week off parenting time schedule with exchanges occurring every other Sunday at 2:00 p.m. at the Patton Museum in Indio, California until such time as the child begins kindergarten."
¶ 4 Father filed a petition to modify parenting time when Child became eligible for kindergarten in 2017. Asserting that school enrollment would necessitate adjustment of the parenting-time schedule, Father argued that Child "would be best served with a parenting plan that allow[s] for the child to reside in Arizona and attend school there." Mother agreed that the parenting-time schedule needed to be changed. She contended, however, that the decree authorized her to select Child's school and her choice of a California school required Child to "reside primarily in California." Both Mother and Father proposed frequent exchanges to provide for roughly equal parenting time on weekends and school breaks.
¶ 5 In his pretrial statement, Father requested, for the first time, "a majority parenting time award and majority legal decision making." (Emphasis added.) In response, Mother filed a motion in limine asking the court to limit the scope of trial to school choice and parenting time. At the outset of trial, the court informed Father: "We're here about parenting time.... but if you feel it's important to offer testimony or evidence with respect to who should be making the decisions on education, ... because that's really what we're here on-what's driving this is ... where [Child]'s going to go to school, I'm going to let you use your time." Father and Mother thereafter presented evidence about the homes and care they provided Child and the schools they proposed he attend.[1]
*10 ¶ 6 The superior court ultimately ruled that Father had not properly sought to modify legal decision-making authority and concluded, under the rubric established by the decree, that Mother's choice of a California school prevailed because Father failed to prove her decision was contrary to Child's best interests. The court then determined parenting time under the framework of A.R.S. §§ 25-403, -403.01, -403.03, -403.04, and -403.05. The court awarded Father once-monthly weekend parenting time in Arizona for seven months of the year, with the caveat that "Father shall make sure that the child attends any regularly-scheduled activities, such as sports games or practices or birthday parties, on Father's Arizona weekends." The court further ordered that Father would have additional parenting time that could only be exercised in California: spring break, five consecutive weeks of summer, half of winter break, and eight additional weekends.
¶ 7 Father challenged the parenting-time allocation in a motion to amend. The court denied the motion. Father appeals.
DISCUSSION
¶ 8 The parties' pleadings framed the issue as one of parenting time alone, and the court adopted that characterization. Parenting time refers to the schedule under which each parent has access to the child. A.R.S. § 25-401(5). Here, however, more was at stake. The decree had long provided for Child's biweekly transport between two cities in different states. That arrangement established not only parenting time, but also two far-flung residences for Child. The court was asked to choose between the two residences to establish a single primary home (and a home state) for Child. The court was, therefore, effectively faced with a relocation question.
¶ 9 The court's power to enter relocation orders is rooted in (and limited by) A.R.S. § 25-408. When deciding a relocation issue that implicates a change in parenting time, the court must determine whether relocation would serve the child's best interests by considering and making specific findings with respect to all relevant factors, including those set forth in § 25-408(I).[2] A.R.S. § 25-408(G), (I) ; Murray v. Murray , 239 Ariz. 174, 177, ¶ 9, 367 P.3d 78, 81 (App. 2016) ; Owen v. Blackhawk , 206 Ariz. 418, 421, ¶ 9, 79 P.3d 667, 670 (App. 2003). The § 25-408(I) factors include-but require more than-the factors prescribed by § 25-403, the statute governing parenting time and legal decision-making determinations. Here, though the court made findings that were adequate for a simple change of parenting time, the parties did not present allegations, and the court made no findings, regarding the balance of the § 25-408(I) factors bearing on Child's relocation from Arizona to another state.
¶ 10 We acknowledge that the court was not properly asked to reassess legal decision-making authority as part of the relocation dispute. Arizona law requires that modification of legal decision-making authority be requested by way of a "Petition for Modification of Legal Decision-Making" accompanied by "an affidavit or verified petition setting forth detailed facts supporting the requested modification." A.R.S. § 25-411(L) ; ARFLP 91(D). Neither party's pleading met that *11 strict standard. The decree therefore remained the source of authority with respect to legal decision-making.[3] And the decree, though it invoked the term "joint legal decision-making authority," actually gave Mother sole authority because it granted her final-say "presumptive decision-making authority." See Nicaise v. Sundaram , 244 Ariz. 272, 278, ¶¶ 18-19, 418 P.3d 1045, 1051 (App. 2018) (petition for review granted Aug. 29, 2018). When a parent has been awarded sole authority, that parent has the right to make major decisions for the child, A.R.S. § 25-401(6), except as the parties agree, in writing, to permit the other parent to decide, A.R.S. § 25-410(A). The court may not substitute its judgment for that of a parent with sole legal decision-making authority except when reallocating authority under § 25-411 or, in extreme circumstances not present here, imposing specific limitations on the authority under § 25-410(A). Paul E. v. Courtney F. , 244 Ariz. 46, 54-55, ¶¶ 25-27, 418 P.3d 413, 421-22 (App. 2018).
¶ 11 Even a parent with sole legal decision-making authority does not have the inherent power to relocate his or her child to another state. While we express no opinion as to the ultimate result in this case, any decision concerning Child's future home state must be made in accordance with A.R.S. § 25-408.
CONCLUSION
¶ 12 We remand to allow the parties to file, and the superior court to consider, appropriate pleadings addressing the factors governing the relocation and parenting-time question and, if properly raised, the issue of legal decision-making authority. Pending such proceedings, the superior court's orders remain in effect.

By the time of trial, Child's kindergarten year was already underway. The parties, as a stopgap measure, had continued to exchange Child every other week, with Child attending a California kindergarten while in Mother's care and an online kindergarten while in Father's care. Both parents acknowledged that the arrangement did not represent a long-term solution, and neither parent proposed permanent online education or homeschooling.

We depart from Buencamino v. Noftsinger to the extent it held that the § 25-408(I) analysis is not implicated absent satisfaction of § 25-408(A) 's condition that "both parties reside in the state." 223 Ariz. 162, 163, ¶¶ 8-10, 221 P.3d 41, 42 (App. 2009). Section 25-408(A) describes the circumstances under which a party must give notice before effecting certain types of relocations. Nothing in the statute provides that subsection (A) limits the types of relocation issues that the court may decide. To the contrary, § 25-408(C), without restriction, authorizes "a parent who is seeking to relocate the child [to petition] the court for a hearing, on notice to the other parent, to determine the appropriateness of a relocation that may adversely affect the other parent's legal decision-making or parenting time rights." Mother's California residency therefore did not eliminate the requirement that the court, which had exclusive continuing jurisdiction under § 25-1032(A), engage in the § 25-408(I) analysis.

To be sure, when the court modifies legal decision-making authority, we will not reverse based on nonprejudicial noncompliance with the statutory procedures. Sundstrom v. Flatt , 244 Ariz. 136, 138, ¶ 8, 418 P.3d 909, 911 (App. 2017) ; In re Marriage of Dorman , 198 Ariz. 298, 302-03, ¶¶ 11-12, 9 P.3d 329, 333-34 (App. 2000). But the court issued no modification order here.