NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KAREN GONZALEZ, *Petitioner/Appellant*,

*v.*

RICHARD IYIOLA OKEWOLE, *Respondent/Appellee*.

No. 1 CA-CV 25-0979 FC

FILED 06-26-2026

Appeal from the Superior Court in Maricopa County
No. FC2018-006673
The Honorable James N. Drake Jr., Judge

**AFFIRMED**

COUNSEL

Stanley David Murray Attorney at Law, Scottsdale
By Stanley David Murray
*Counsel for Petitioner/Appellant*

Law Office of Brad Reinhart, LLC, Phoenix
By Brad Reinhart
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Andrew J. Becke joined.

---

**F A B I A N**, Judge:

¶1 Karen Gonzalez ("Mother") appeals the superior court's order designating Richard Okewole ("Father") as the primary residential parent for their minor child, ("Nate") (a pseudonym), and approving Nate's relocation to live with Father in Oregon. Because Mother had adequate notice that relocation was at issue and there were sufficient reasons to find relocation was in Nate's best interests, this Court affirms.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 Mother and Father were never married. Nate has lived with Mother in Phoenix his entire life (eight years). After separating, Father and Mother both spent time with Nate, although no parenting order existed. In November 2024, Father—then living in Tennessee—petitioned for legal decision making and parenting time, which Mother contested. Shortly thereafter, he amended his petition to request that Nate's primary residence be with Father. After filing the petition, Father moved to Oregon for a new job.

¶3 Before the evidentiary hearing in May 2025, the parties submitted separate pretrial statements. "Relocation" was not explicitly mentioned in either party's statement. Father's statement did not mention he recently moved. However, Mother's statement acknowledged Father's recent move to Oregon, and Father's was clear that he was asking for Nate to reside with him during the entire academic school year.

¶4 At the evidentiary hearing, Father testified that Mother had a history of preventing him from seeing Nate or conditioning visitation on arbitrary demands. He introduced text messages to that effect. Father presented himself as generally being open to Mother having significant parenting time and claimed he would not withhold Nate from Mother.

¶5 Father testified he was worried about Nate's education because Mother had pulled Nate out of school multiple times beginning in the first grade, Nate never finished a full year of school in a "brick-and-

mortar" setting, and Mother had no training on developing or implementing a homeschool curriculum. Father testified he was starting a new job in Oregon and intended to have Nate attend the school where he works. Father also testified he thought being in a "brick and mortar" school would help Nate's academic and emotional stability.

¶6 At the hearing, Mother acknowledged that she knew Father had just moved to Oregon from Tennessee and he wanted Oregon to be Nate's primary residence. Mother testified that she does not think Nate should "relocate" because she has a five-bedroom house, their family is around, and Nate is doing well with homeschooling. With respect to homeschooling, Mother testified she creates Nate's curriculum using online tools and Nate has a tutor who comes twice a week for three hours. Mother also testified that the tutor says Nate is performing at grade level, but admitted Nate hasn't taken any standardized test and that she doesn't really know whether he is performing at grade level. Mother testified she runs a non-profit, works as a nurse in the evenings, and is overwhelmed by her "very, very busy life."

¶7 Following the hearing, the court entered judgment relocating Nate to Father's custody in Oregon. The court made specific findings with respect to each of the A.R.S. § 25-408(I) best-interests factors. Mother then filed motions to amend or reconsider the court's judgment, which were denied.

¶8 Mother timely appealed. This Court has jurisdiction pursuant to Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 2101(A)(1).

## DISCUSSION

¶9 Mother argues the court erred in relocating Nate to live primarily with Father for two reasons: 1) the issue of relocation was not properly raised in Father's petition and pretrial statement, and 2) the court relied on improper factors in its § 25-408 relocation analysis.

¶10 This Court reviews a superior court's orders concerning custody and relocation determinations for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 176 ¶ 5 (App. 2016). The superior court abuses its discretion "when the record, viewed in the light most favorable to upholding the [superior] court's decision, is devoid of competent evidence to support the decision." *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30 ¶ 14 (App. 2003).

I. **Mother Had Adequate Notice That Relocation Was at Issue.**

**¶11** Mother argues that the superior court should not have addressed relocation because Father never requested "relocation" in his petition or pretrial statement. But relocation is at issue whenever there is a change in a child's primary residence outside of the state. *See Woyton v. Ward*, 247 Ariz. 529, 533 ¶ 11 (App. 2019). Father's amended petition, which listed his address in Tennessee, requested that Father be Nate's primary residential parent during the school year. Similarly, Father's pretrial statement made clear that he was requesting that Nate's primary residence be with Father. Mother, in her statement, acknowledged Father's move to Oregon. And at the evidentiary hearing, Mother confirmed she was aware Father lived in Oregon and was seeking primary residential custody and testified that she was opposed to Nate's "relocation." On these facts, relocation was properly before the court.

II. **Competent Evidence Supported the Court's Finding That Relocation Was in Nate's Best Interests.**

**¶12** Mother also argues the superior court erred because the evidence does not support the court's finding that relocation was in Nate's best interests. This Court disagrees.

**¶13** Section 25-408 governs relocation, even in the absence of an existing order, whenever the court changes a child's primary residence over a parent's objection. *Id.* at ¶¶ 8-9. While the language of § 25-408 seems to limit its application to where there is a "written agreement or court order providing for custody or parenting time by both parents," this Court has held that those prerequisites only apply to the notice subsection and not the entire statute. *Id.* at ¶ 8 (citing *Berrier v. Rountree*, 245 Ariz. 604, 606 ¶ 9 n.2 (App. 2018)).

**¶14** Relocation is appropriate when it is in the "child's best interests." A.R.S. § 25-408(G). "The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child." *Id.* The superior court "must make specific findings on the record as to all relevant factors [under A.R.S. § 25-408(I)] and the reasons its decision is in the child's best interests. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 20 (App. 2009). Importantly, "no single factor is controlling . . . all of them should be weighed collectively." *Pollock v. Pollock*, 181 Ariz. 275, 278 (App. 1995).

**¶15** Here, the court conducted a full § 25-408 analysis. It analyzed each of § 25-408(I) factors (and the incorporated § 25-403(A) factors) in determining what was in Nate's best interests.

**¶16** Mother argues that the court improperly relied on her facial expressions while she was not testifying in making its relocation determination. The superior court noted that "one of the most compelling reasons [it] approves of relocation is because when Father was testifying about the challenges that he faced in trying to acquire parenting time, Mother would smile and grin every time he spoke of a challenge. Mother appeared to be relishing her past work on thwarting parenting time."

**¶17** Even assuming the court's reliance on Mother's non-testimonial demeanor was improper, the record still provides competent evidence to support the court's best-interests determination. *See Burton*, 205 Ariz. at 30 ¶ 14. The court found Father credibly testified he would honor Mother's parenting time following relocation. *See* A.R.S. § 25-408(I)(4). The court noted Father placed a premium on education and Mother acknowledged his improved stability since getting married. *See* A.R.S. § 25-408(I)(3). Similarly, the court found that Father's emphasis on education would enhance Nate's long-term stability and opportunities, even though the move to Oregon would likely cause some short-term challenges. *See* A.R.S. § 25-408(I)(8). And although the court found both parties were acting in good faith, it found Father had struggled to obtain his parenting time. *See* A.R.S. § 25-408(I)(2). Independent of Mother's demeanor, the court found that "Mother has been thwarting Father's parenting time." *See* A.R.S. §§ 25-408(I)(1), 403(A)(1). That finding is supported by Mother's text messages and Father's testimony. Finally, the court expressed legitimate concerns about Mother's capacity to effectively homeschool Nate, noting that her work schedule would limit her availability, and the only evidence of Nate's grade-level performance came from a weekly tutor rather than Mother's direct observation. *See* A.R.S. § 25-408(I)(6). In contrast, the court found Father has a viable education plan at a brick-and-mortar setting where he teaches. *See id.* This Court discerns no error in the superior court's determination that the collective weight favors Father. *Pollock*, 181 Ariz. at 278.

**¶18** Mother argues the court's education findings reveal an unfair bias against homeschooling, but the record reveals no prejudicial bias, and this Court will not reweigh the evidence on appeal. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). The record supports the court's determination that homeschooling was not in Nate's best interests because of Mother's specific capacity to implement it. Mother testified to running multiple home-based businesses, working nights, and feeling overwhelmed. The court also noted the only evidence Nate was performing at grade level was from his tutor.

**¶19**        Mother's reliance on *Smith v. Smith*, 90 Ariz. 190 (1961), to support her bias argument is misplaced. *Smith v. Smith* addressed whether a parent giving instruction on religious doctrines at odds with majority views could justify a change in custody. 90 Ariz. at 193. The constitutional principles addressed there do not prevent a court from assessing whether a specific parent has the time and expertise to deliver a homeschool program effectively.

**¶20**        Because competent evidence supports the court's best-interests determination, the superior court did not err. *See Burton*, 205 Ariz. at 30 ¶ 14.

### III.    Fees and Costs on Appeal.

**¶21**        Both Mother and Father request attorney fees incurred on appeal. This Court finds insufficient evidence of financial disparity or an unreasonable position taken and therefore declines to award either party fees on appeal. *See* A.R.S. § 25-324. But, as the prevailing party, Father is entitled to his costs on appeal upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure. *See* A.R.S. § 12-341.

### CONCLUSION

**¶22**        This Court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR