79 P.3d 667

**In re the Marriage of Elizabeth Clark OWEN, Petitioner–Appellant,**

v.

**Charles Edward BLACKHAWK, Respondent–Appellee.**

**No. 1 CA–CV 02–0363.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 18, 2003.

Mead & Associates By Judith E. Abramsohn, Glendale, Attorneys for Petitioner–Appellant.

Bellah, Harrian & Pearson, P.L.C. By Robert F. Harrian and Stanley David Murray, Glendale, Attorneys for Respondent–Appellee.

## OPINION

THOMPSON, Judge.

¶ 1 Elizabeth Clark Owen (mother) appeals from the trial court's orders preventing her from relocating the parties' minor child to Wyoming, designating Charles Edward Blackhawk (father) as the primary residential parent, and denying mother's motion for relief from order and motion for new trial. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Pursuant to a 1999 divorce decree, the parties shared joint legal custody of their minor child. Mother was the primary residential parent, and father had the child for at least one thirty-six-hour period and one twelve-hour daytime period each week.

¶ 3 In January 2001, mother informed father that she was planning to marry a man who lived in Wyoming and that she wanted to relocate there with the child in May 2001. Father initially agreed but soon changed his mind and opposed the relocation. Mother married in February 2001 and had another child in September 2001. Mother continued to live and work in Arizona pending the custody resolution.

¶ 4 Father filed a petition to prevent relocation. The trial court held evidentiary hearings on May 1, 2001 and January 8, 2002. The court-appointed custody evaluator, Al Silberman, Ed.D., concluded that it was in the child's best interests to remain living in Arizona with mother as the primary residential parent, but, if mother moved, the child should stay in Arizona with father.

¶ 5 The trial court found that it was not in the child's best interests to relocate because the move would adversely affect father's rights and interfere with his relationship with the child. The trial court continued joint custody but designated father as the primary residential parent during the school months, typically from September to May. Mother had parenting time during spring breaks, alternating Thanksgivings, half of the winter/Christmas break, and most of the summers.

¶ 6 Mother filed a motion for relief from order and motion for new trial in which she argued that the custody order imposed a long-distance access schedule despite the fact that she still lived in Arizona and that irregularities in the evidentiary hearings prejudiced her so as to justify a new relocation hearing. The trial court denied the motion without comment. Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B), (C), and (F)(1) (2003).

## DISCUSSION

### A. Relocation

¶ 7 Mother argues that the trial court abused its discretion by not allowing her to relocate with the child to Wyoming. We review the trial court's decision regarding child custody for an abuse of discretion. *In re Marriage of Diezsi,* 201 Ariz. 524, 526, ¶ 3, 38 P.3d 1189, 1191 (App.2002). Specifically, mother argues that the trial court failed to follow the framework for deciding relocation issues set forth in A.R.S. § 25–408(J) (Supp. 2002). Mother contends that the trial court erroneously focused on the fact that relocation would interfere with father and child's relationship and would adversely affect father's rights.

¶ 8 The trial court is required to consider the factors set forth in A.R.S. § 25–408(J) in determining whether a relocation is in the child's best interests. *See* A.R.S. § 25–

408(J). Here, the trial court listed A.R.S. § 25–408(J)(3), (5), (6), and (8) and referenced A.R.S. § 25–403 (Supp.2002), which is a factor listed in A.R.S. § 25–408(J)(1), as factors it considered relevant. However, the trial court did not elaborate or explain how it weighed any factor, other than to state that the relocation would interfere with the continuation of a meaningful relationship between father and child and would adversely affect father's rights.

¶ 9 Father argues that detailed findings of fact are not required under A.R.S. § 25–408, only under A.R.S. § 25–403(J), which father asserts does not apply to this case. We disagree. Although A.R.S. § 25–408 does not require that trial courts make specific findings of fact in deciding whether to allow relocation, A.R.S. § 25–403(J) requires the court, in a contested custody case, to "make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." This case involved contested custody. Mother sought to retain primary physical custody of the child in Wyoming. Father opposed relocation and sought a change of physical custody if mother did move to Wyoming. Physical custody was contested even though this case was brought under the relocation statute. Ultimately, the trial court modified physical custody.

¶ 10 Father argues that a change in parenting time does not constitute a change of custody, and, therefore, A.R.S. § 25–403(J) does not apply. He cites *Hindsley v. Hindsley,* 145 Ariz. 428, 701 P.2d 1236 (App.1985), in support of this claim. *Hindsley* involved an order continuing joint legal custody but changing the primary residence from the mother to the father. *Id.* at 429–30, 701 P.2d at 1237–38. The court concluded that a change in "physical presence" was not a modification of joint custody and so the change did not violate the predecessor to A.R.S. § 25–403(T), which prohibited a change of custody within one year of the original decree. *Id.* at 430, 701 P.2d at 1238.

■ ¶ 11 *Hindsley* does not hold that a change of physical custody is not a contested custody matter for purposes of A.R.S. § 25–403(J). Further, the mother in *Hindsley*

first sought sole custody and only objected to the court's consideration of an asserted change of custody after primary physical custody was granted to the father, and, therefore, mother could be seen to have acquiesced in the court's determination of the child's physical placement. *Id.* at 429, 701 P.2d at 1237. Conversely, a more recent case specifically addressing the requirements of A.R.S. § 25–403(J) held that specific findings must be made in a case that involved a change of physical custody but continuing joint legal custody. *Diezsi,* 201 Ariz. at 525–26, ¶¶ 1, 4, 38 P.3d at 1190–91. An order designating one parent as primary residential parent constitutes an order regarding physical custody as opposed to an order regarding parenting time. Physical custody involves the child's residential placement, whereas parenting time is what is traditionally thought of as "visitation." *See* A.R.S. § 25–402(3) (1999) (defining "joint physical custody" as when the parties share the residence of the child equally and "parenting time" as time that the child is physically placed with a parent). The statute requiring specific findings is not limited to contested "legal" custody cases and applies equally to physical custody matters. Therefore, a change in joint physical custody is a change in custody, whereas visitation is one aspect of custody. Because this case involved a substantial change in physical custody that mother disputed, we hold that the trial court was obligated to make the specific findings required by A.R.S. § 25–403(J).

■ ¶ 12 The trial court's order lists some statutory factors by number and makes detailed findings only as to A.R.S. § 25–408(J)(1). Those detailed factors do not favor either parent. The evidence suggests that there are reasons weighing both in favor of and against relocation. Without further explanation from the trial court regarding its consideration of the applicable factors, we cannot say that the trial court did not focus too much attention on the impact on the child's relationship with father to the exclusion of other relevant considerations. Accordingly, we conclude that the trial court abused its discretion in changing the primary residential parent and altering the parenting

time schedule without making findings on the record that comply with A.R.S. § 25–403(J). *See Diezsi,* 201 Ariz. at 526, ¶ 5, 38 P.3d at 1191. We reverse and remand to allow the trial court to state on the record its findings in compliance with A.R.S. § 25–403(J).

### B. Modification of Physical Custody and Parenting Time

¶ 13 The trial court's order continues joint legal custody but modifies physical custody from mother to father and imposes a long-distance parenting time schedule for mother. Mother argues that the modification of physical custody was an abuse of discretion because father never requested it in his petition and because the evidence does not support such a change. We agree.

¶ 14 Father's petition sought to prevent mother from relocating with the child, but father only sought a change of physical custody and parenting time if mother moved to Wyoming without the child. Father never asked to become the primary residential parent in the event that both parents remained in Arizona.

¶ 15 The evidence was uncontested that mother would remain in Arizona if the child could not move with her. She so testified several times, and the expert psychologist noted such in his custody evaluation. The expert also testified that he believed it was in the child's best interests to remain with mother as the primary residential parent if mother stayed in Arizona. Mother apparently traveled to Wyoming during these proceedings but has kept her employment and house in Arizona. There also is no evidence to support father's assertion that mother will move to Wyoming. There is no suggestion that mother has ever violated court orders or denied father access to the child. In addition, there is no reason to believe that mother would move the child to Wyoming in violation of an order that the child stay in Arizona. Thus, father's claim that the change of physical custody is needed to prevent such a move is unfounded.

¶ 16 "To change a previous custody order, the court must determine whether there has been a material change in circum-

stances affecting the welfare of the child." *Canty v. Canty,* 178 Ariz. 443, 448, 874 P.2d 1000, 1005 (App.1994) (citing *Pridgeon v. Superior Court,* 134 Ariz. 177, 179, 655 P.2d 1, 3 (1982)). There was no request for a change of the designated primary residential parent if mother did not move to Wyoming. The evidence clearly showed that mother had no intention of moving to Wyoming if the child was not permitted to go with her. There is no evidence of any material change to justify changing the primary residential parent or restricting mother's parenting time as long as mother remains living in Arizona. We reverse the order designating father as the primary residential parent and imposing a long-distance parenting time schedule for mother.

### C. Denial of Motion For Relief from Order and New Trial

¶ 17 Mother argues that she was entitled to a new hearing because of several procedural irregularities that resulted in denying her a fair hearing. We will not disturb the trial court's ruling on a motion for relief from order under Arizona Rule of Civil Procedure 60(c) absent an abuse of discretion. *Tovrea v. Nolan,* 178 Ariz. 485, 490–91, 875 P.2d 144, 149–50 (App.1993) (citing *Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 688 P.2d 637 (1984)).

¶ 18 Mother contends that father served his petition to prevent relocation in an untimely manner. Even if service was one day short under Arizona Local Rule of Practice Superior Court (Maricopa County) 6.9(h), mother appeared at the hearing prepared, requested that the trial court proceed on the merits, and objected to any continuation. Accordingly, she has not shown prejudice.

¶ 19 In addition, mother objects to the continuation of the hearing from May 1, 2001 to January 8, 2002. While such a delay in a custody matter is lengthy, our review of the record convinces us that the delay was due to the court's heavy calendar and the schedules of the parties and attorneys.

¶ 20 Mother also asserts that she may have been prejudiced by father's failure to disclose all the materials he provided to Dr.

Silberman. However, Dr. Silberman testified that he relied on very little of the material that father gave him. Mother failed to establish what undisclosed material Dr. Silberman relied on and thus has not shown how she was prejudiced.

¶ 21 Mother further claims that Dr. Silberman's report was issued eight months after he was appointed and only a few days before the January hearing. Both parties were equally prejudiced by the late filing of Dr. Silberman's report. Mother was disadvantaged to a greater extent because she did not know until she received the report what materials or references father gave Dr. Silberman. Although this lengthy delay hindered mother's response to the material that father supplied to Dr. Silberman, mother was not precluded from seeking additional expert information before the January hearing. Mother also was allowed to testify at the second hearing in response to the evaluation. Thus, we cannot say that the delay warranted a new hearing.

¶ 22 Mother notes that father failed to inform Dr. Silberman of his engagement and that Dr. Silberman failed to interview the fiancée and her children. Dr. Silberman's report makes passing reference to the fact that father was engaged but contains no discussion of the impact of that fact on the custody evaluation. Because Dr. Silberman was not questioned about this issue at the hearing, we cannot ascertain what, if any, effect this information had on his evaluation. Father's engagement is an important factor in the child's life and should be considered by the expert conducting the custody evaluation. Indeed, mother's marital history and remarriage factored heavily in Dr. Silberman's evaluation. The court is required to consider "[t]he interaction and interrelationship of the child with the child's parent or parents, the child's siblings *and any other person who may significantly affect the child's best interests.*" A.R.S. §§ 25–403(A)(3) (emphasis added); 25–408(J)(1). However, given the trial court's limited findings, we cannot say that this factor was given adequate consideration. Accordingly, on remand the trial court should consider father's engagement.

¶ 23 Mother's motion also asserted that there was newly discovered evidence of an order of protection taken out by father's fiancée that covered father and his residence. The order of protection was taken out after the hearing and was the proper subject of a motion for relief from order pursuant to Ariz. R. Civ. P. 60(c)(2). Given the allegations made in father's fiancée's order of protection, we believe that the trial court at least should have considered the newly discovered evidence and heard from father regarding the order of protection. This evidence is related to father's engagement, which should be given full consideration on remand.

¶ 24 Accordingly, we hold that on remand the trial court shall consider father's engagement pursuant to A.R.S. § 25–403(A)(3) and the newly discovered evidence of an order of protection covering father and his residence.

**D. Attorneys' Fees on Appeal**

¶ 25 Both parties request attorneys' fees on appeal pursuant to A.R.S. § 25–324 (2000). The parties shall bear their own attorneys' fees because neither party has taken an unreasonable position on appeal, and the parties have comparable financial resources.

## CONCLUSION

¶ 26 We reverse and remand for further proceedings in accordance with this decision.

CONCURRING: G. MURRAY SNOW, Presiding Judge and JOHN C. GEMMILL, Judge.