NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BELLA P.,

Appellant,

v.

DEPARTMENT OF CHILD SAFETY, Y.D.,
Y.D.,

Appellees

No. 1 CA-JV 16-0141
FILED 9-15-2016

Appeal from the Superior Court in Maricopa County
No.  JD 510937
The Honorable Timothy Ryan, Judge

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen, P.C., Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Petitioner/Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Samuel A. Thumma and Judge Margaret H. Downie joined.

---

**T H O M P S O N**, Judge:

¶1      Bella P. (grandmother) appeals from the juvenile court's denial of her motion to intervene and her request to change physical custody of her two dependent grandchildren.  Because grandmother has not shown the juvenile court abused its discretion, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

¶2      Grandmother is the maternal grandmother of two young children adjudicated dependent after one of the children was discovered to have had multiple fractures of the legs which occurred during a seven to ten-day period.  Parents denied the abuse and variously asserted the child's injuries must have been caused by others, including hospital personnel and the rabbi who performed the child's bris.  They also alleged that various family members had been present in their home.  The children's biological parents' parental rights were terminated in 2014 and that determination was affirmed on appeal in *Rosabelle P. v. DCS*, 2015 WL4455913.

¶3      Between 2013-2015, the children lived in multiple family placements, including with their maternal grandfather, the former husband of appellant grandmother. The children were removed from maternal grandfather's care after grandfather allowed continued contact with the biological parents after the severance.  He stated the children "should be" with their mother.

¶4      In August 2015, the Department of Child Safety (DCS) began the process to transfer the children's physical custody to grandmother. Grandmother had, just two weeks before, come from her home state of New York in order to adopt these children.  Grandmother passed her home study. At that time, grandmother denied any prior contact with child protective services.

¶5  The children's guardian ad litem (GAL) objected to the placement with grandmother. One objection was the home study was not done on grandmother's actual residence, as she was only in Arizona temporarily. The objection noted grandmother was staying in an apartment where several family members, including maternal grandfather and the biological parents, had previously lived. The GAL attached a copy of the DCS "Assessment for Kinship Foster Care" which included statements by grandmother that she did not believe the parents abused the children, but rather that the injuries had occurred during the child's bris. Grandmother stated that her daughter was a "loving" mother and that DCS should not have removed the children from her care. The court was further reminded that several family member placements had not worked out, including placement with the maternal grandfather. The GAL advised the court that the children were currently in a prospective adoptive home and had bonded to that family.

¶6  Before the transfer occurred, it came to DCS's attention that grandmother had two prior substantiated interactions with the New York child protective services which she had failed to disclose. DCS successfully moved to stay the transfer. Grandmother filed a letter with the court admitting, and attempting to explain, her two prior contacts with New York child protective services.

¶7  Two weeks later, grandmother appeared at a scheduled placement report and review hearing. The court voiced concerns about the situation with the children being discussed on the internet and that there was a potential crowdfunding effort related to legal fees. Grandmother denied "gossip" that she allowed their mother interact with the children. Grandmother was apparently escorted from the courtroom by deputies. At the hearing it became clear the placement family believed that their physical safety was at risk. The juvenile court advised the placement to obtain orders of protection against several of the children's biological family members.

¶8  Next, grandmother filed the instant motion to intervene and a request to change physical custody. She voiced concerns about the children's current placement and, in her motion, provided the court with a criminal background search that had been done on one of the placements, included copies of Facebook pages, and had photos of the placement letting a child ride in the front seat while dropping the child at school.

¶9  Oral argument was held solely on the motion to intervene. The request for change in physical custody was tabled until after the court

determined if intervention was appropriate. The court stated that if intervention were allowed, an evidentiary hearing would be held on the issue of physical custody. Grandmother did not object.

¶10        At oral argument, DCS advised the court that the Department's record search indicated that the biological parents mailing address was still the same as the physical address listed for grandmother. DCS objected to grandmother's private investigator conducting searches on the placement and standing in or around the placement's yard to take pictures. The GAL advised the court of a report from the preschool that grandmother had caused a disturbance, apparently when asked for identification, that nearly required the police being called.

¶11        After taking the matter under advisement, and after review of the record, the juvenile court denied grandmother's motion to intervene and for change in physical custody. This timely appeal followed.

DISCUSSION

¶12        Grandmother sought permission to intervene pursuant to Arizona Rule of Civil Procedure 24(b).[1]  That rule reads:

> Upon timely application anyone may be permitted to intervene in an action:
>
> 1. When a statute confers a conditional right to intervene.
>
> 2. When an applicant's claim or defense and the main action have a question of law or fact in common.
>
> In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

"Grandparents are among those people eligible to become guardian of a child found to be dependent" and, as such, a child's grandparents "should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby." *Bechtel v. Rose*, 150 Ariz. at 73, 722 P.2d at 241; *see* A.R.S. § 8-

---

[1] Although grandmother quoted Arizona Rule of Civil Procedure 24(a) in her motion and brief on appeal, she does not assert intervention of right under that rule (as opposed to claiming permissive intervention under Rule 26(b)).

514(B) (2014). We review the juvenile court's denial of grandmother's motion to intervene for an abuse of discretion. *See Allen v. Chon-Lopez*, 214 Ariz. 361, 364, 153 P.3d 382, 385 (App. 2007) (citing *Bechtel v. Rose*, 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986)).

**¶13** On appeal, grandmother argues that she met all the legally required *Bechtel* factors for intervention and, citing *Chon-Lopez*, that she should have been allowed to intervene even if the juvenile court did not expect to eventually award her custody. *Bechtel* outlined several relevant factors which the court should consider prior to determining whether a grandparent should be allowed to intervene in a dependency matter. *See Bechtel*, 150 Ariz. at 71, 722 P.2d at 239 (citing *Spangler v. Pasadena City Bd. Of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1974) (outlining factors generally relevant to permissive intervention)).[2]

**¶14** The court here did find that grandmother met the threshold standard of Rule 24(b)(1), because there was a conditional right to intervene as a family member. However, after consideration of the facts in the case,

---

[2] Those factors are:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

To this end, grandmother asserts that, as she currently has no standing, her intervention would contribute to the full development of the underlying factual issues and that no other party will provide adequate representation of her position related to the stability, consistency, adoption and love for her grandchildren. She states that her intervention would actually shorten the litigation because she "will strongly pursue placement and adoption immediately."

the court explicitly found grandmother's intervention was not in the children's best interests. The court stated grandmother

> has consistently acted in a way that places in serious doubt her ability to: a) work honestly with the professionals involved in protecting the minor children's best interests, b) consider the best interests of the children as paramount to the wishes and whims of the extended biological family, and c) protect the children from the biological parents, whose rights have been terminated.

The court concluded "[i]ntervention would cause extensive delay and detrimentally impact the ability to provide permanency for the children, a goal that has already been delayed." Following that, the court summarily denied grandmother's request to change physical custody.

¶15    This matter is not akin to *Bechtel*. In *Bechtel*, the court found a "paucity" of a record and "no indication at all as to why the [grandparent's] motion was denied." 150 Ariz. at 72, 722 P.2d at 240. Such is not the case here. This court did not "summarily" deny intervention, rather it made an "individualized determination" based on the evidence as to whether intervention was in the children's best interests as required by *Bechtel*. *See* 150 Ariz. at 74, 722 P.2d at 242; *see also William Z. v. ADES*, 192 Ariz. 385, 389, 965 P.2d 1224, 1228 (App. 1998) (a summary denial of intervention is an abuse of discretion).

¶16    Here, the court had the full severance record before it and had interacted with grandmother on more than one occasion. It had grandmother's admission that she failed to disclose to DCS her two prior interactions with child protective services in New York—which grandmother dismissed as small matters that had occurred a long time ago. It knew that the biological family was close knit, with various relatives, including the biological parents, previously living in the same apartment grandmother listed as her current address. The court knew the biological parents appeared to still use that same address as their mailing address. It knew that the family had unsuccessfully put forward several family members to take the children, and it had removed the children from the care of the maternal grandfather, who's apartment it was, because he allowed the biological parents contact with the children. It had the information that grandmother advised the DCS worker, that although she would keep the children away from their biological mother, she did not believe the parents caused the injury and they were "loving" parents. It saw the photos and documents she submitted with her motion to intervene

demonstrating grandmother and her private investigator were watching the placement family. The court heard allegations that grandmother had caused a scene at the children's daycare which had nearly resulted in the police being called and had seen her behavior in court. And, most importantly, it knew that there was a prospective adoptive family waiting to adopt the children.

¶17         With all that knowledge and evidence, the court reasonably determined that grandmother, based on the evidence, was not likely to be cooperative or to protect the children from their biological family. It reasonably determined that additional delay resulting from intervention would detrimentally effect the children. The juvenile court, as the trier of fact, is in the best position to weigh the evidence, observe the parties' demeanor, and judge the credibility of witnesses. *See Jesus M. v. Ariz. Dep't Econ. Sec.*, 203 Ariz. 278, 53 P.3d 203 (App. 2002). We accept the juvenile court's factual findings "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555, 944 P.2d 68, 70 (App. 1997).

¶18         Finally, grandmother argues that she requested and was entitled to an evidentiary hearing. DCS asserts both that the court did not need an evidentiary hearing in order to determine whether intervention should be granted and that grandmother assented to oral argument on intervention. We agree. The court had sufficient evidence to make this best interests determination, even if grandmother had objected to the lack of an evidentiary hearing.

¶19         Given the extensive record in this matter, the court's prior experience with grandmother, the extensive period the children have been in care and the need for permanency, grandmother has not shown the juvenile court abused its discretion in denying her motion to intervene. For these same reasons, we also find the juvenile court did not abuse its discretion in denying grandmother's request to change physical custody. *See Owen v. Blackhawk*, 206 Ariz. 418, 421, ¶ 11, 79 P.3d 667, 670 (App. 2003) (a change in physical custody determination is reviewed for an abuse of discretion).

## CONCLUSION

¶20     The juvenile court is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA