NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JAMES SNYDER DELLARIPA, *Petitioner/Appellee*,

*v.*

JULIE DIANE DELLARIPA, *Respondent/Appellant*.

No. 1 CA-CV 16-0155 FC
FILED 2-9-2017

Appeal from the Superior Court in Maricopa County
No. FC2010-050562
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

COUNSEL

Jennings, Haug & Cunningham, L.L.P., Phoenix
By Blake E. Whiteman, Ryan B. Johnson
*Counsel for Petitioner/Appellee*

Katz & Bloom, Phoenix
By Norman M. Katz
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Patricia K. Norris and Judge Paul J. McMurdie joined.

---

**J O N E S**, Judge:

**¶1**         Julie Dellaripa (Mother) appeals the family court's orders: (1) awarding James Dellaripa (Father) sole legal decision-making authority; and (2) denying her requests for additional parenting time on specific religious holidays.[1]  For the following reasons, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

**¶2**         The parties divorced in September 2011.  Within the divorce decree, the family court ordered the parties share joint legal decision-making authority regarding their two minor children (the Children) and essentially equal parenting time.  As part of the parenting plan, the court granted Mother parenting time on seven Jewish holidays but allowed Father five additional summer-vacation days to offset this award.  Additionally, each parent was given parenting time on his or her birthday.

**¶3**         In January 2014, Father petitioned for modification of custody and parenting time.  The family court appointed Dr. Brian Yee, as a behavioral health professional, to conduct a comprehensive family evaluation.  In August 2014, Dr. Yee completed the evaluation.  Within his

---

[1]     Mother also opposes the family court's "denial of her request to participate in counseling with the children."  Mother's opening brief, however, only mentions this issue in passing, without any corresponding citations to legal authorities, relevant references to the record, or other support.  *See* ARCAP 13(a)(7).  She has therefore waived this issue on appeal. *See Stafford v. Burns*, 1 CA-CV 15-0476, 2017 WL 164310, at *7, ¶ 34 (Ariz. App. Jan. 17, 2017) (citing *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6 (App. 2007)).

[2]     We view the facts in the light most favorable to upholding the family court's judgment. *See Smith v. Smith*, 235 Ariz. 181, 183 n.1, ¶ 1 (App. 2014) (citing *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998)).

report, Dr. Yee noted "Mother's pattern of repeatedly changing the schedule at the last minute creates unpredictability and anxiety for the [C]hildren." He further acknowledged that "[w]hile [M]other's objection to [F]ather's scheduling the [C]hildren's activities during her parenting time is understandable, it also appears that she lacks insight, at least to an extent, as to the [C]hildren's wishes and commitment to such activities." Consequently, Dr. Yee recommended Father be granted sole legal decision-making authority and deemed the Children's primary residential parent during the schoolyear. Dr. Yee did suggest Father be required to promptly inform Mother of his decisions. Based upon Dr. Yee's conclusions, Father moved to temporarily modify the divorce decree, asking he be awarded sole legal decision-making authority and designated the primary residential parent during the schoolyear.

¶4            In October 2014, the family court held an evidentiary hearing on Father's motion. Dr. Yee testified consistently with his report. In rebuttal, Mother presented the expert testimony of Dr. Phillip Stahl. Dr. Stahl criticized Dr. Yee's methodology and processes as incomplete and unbalanced in favor of Father, noting Dr. Yee only evaluated the Children once, when Father brought them for the evaluation, relied upon the Children's journals written at Father's home, and did not compare school records documenting the Children's tardiness while in Mother's care to school records generated after Mother obtained psychiatric treatment to improve her timeliness and organization. However, Dr. Stahl did not offer an opinion on what custody and parenting time arrangement would serve the Children's best interests.

¶5            Following both doctors' testimony, the family court issued a temporary order that, effective November 2014, "the [C]hildren shall reside with Father during the school week," and "Father shall have 'presumptive decision making authority.'" Thus, the court explained, Father had "the right to make a preliminary decision [regarding the Children's care] that he [must] then communicate to Mother." If Mother believed the decision was not in the Children's best interests, "she shall have the right to seek review through the Court."

¶6            In December 2014, Mother moved to appoint Dr. Ann Schroeckenstein to conduct a second comprehensive family evaluation. Believing some of Dr. Stahl's critiques had merit and that Dr. Yee's evaluation was "conclusory in nature," the family court granted Mother's request and appointed Dr. Schroeckenstein to conduct a second evaluation. Dr. Schroeckenstein's assessment was admitted at the final trial held in January 2016.

¶7         Dr. Schroeckenstein's report mirrored Dr. Yee's in many material aspects.   After considering the Children's best interests, Dr. Schroeckenstein concluded:

> [I]t is recommended that the parents share joint decision-making, but that Father act as the final decision-maker if there is not agreement. . . . This arrangement appears to be in the best interest of the [C]hildren due to Father's consistent adherence to the [C]hildren's medical and educational needs, Mother's repeated patterns of inconsistent and/or delayed responsiveness to co-parenting inquiries, and [Mother's therapist] reporting that Mother's challenges with time management and organization will be chronic in nature.  If Mother does not believe Father has reasonably considered her perspective[,] . . . it is recommended that she raise such concerns with the Court . . ..

Like Dr. Yee, Dr. Schroeckenstein also recommended Father be designated the primary residential parent during the schoolyear.  Regarding the holiday schedule, Dr. Schroeckenstein recommended Mother have the Children on four Jewish holidays from 3:00 p.m. the first night of the holiday until 3:00 p.m. the following day, and that the Children follow the normal parenting schedule on the parents' or Children's birthdays, with each parent having the opportunity to celebrate such birthdays during his or her parenting time.

¶8         After both parties testified, the family court took Father's petition under advisement.  In its ruling, the court cited to both Dr. Yee's and Dr. Schroeckenstein's reports throughout its discussion on what legal decision-making and parenting time orders were in the Children's best interests.  The court ultimately found that "Mother wishes to increase her daughters' involvement in Judaism but the [C]hildren may not agree with Mother's wishes."  The court further found "Mother continues to fail to co-parent with Father and fails to communicate in a concise and adult manner with the other parent," thus concluding "it [wa]s more likely for Father to allow frequent, meaningful, and continuing contact between the [C]hildren and Mother."

¶9         Although the family court awarded Father "sole" legal decision-making authority over the Children, it defined that authority as presumptive.  As articulated by the court, presumptive decision-making authority allowed Father to make a preliminary decision he was then required to communicate to Mother.  Mother was given forty-eight hours

to weigh in on the issue, after which time Father would make a final decision. If Mother believed Father's final decision was contrary to the best interests of the Children, she could seek judicial review. The court also adopted virtually all of Dr. Schroeckenstein's recommendations regarding holiday parenting time and declined to award Mother parenting time for the seventeen additional Jewish holidays requested.

¶10 Mother timely appealed the family court's orders. This Court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1)[3] and -2101(A)(1).

## DISCUSSION

I. **The Family Court's Findings Support Its Award of Sole Legal Decision-Making Authority to Father.**

¶11 Mother first contends the family court erred by not adopting Dr. Schroeckenstein's recommendations as to legal decision-making. Mother argues that because Dr. Yee's evaluation recommended sole legal decision-making for Father and Dr. Stahl partially discredited Dr. Yee's methodology, the court should have deferred to Dr. Schroeckenstein's evaluation. We review custody and parenting time orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013) (citing *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 3 (App. 2002)); *see also* A.R.S. § 25-401(3) (equating decision-making authority with "legal custody").

¶12 As an initial matter, however, "[t]he best interests of the child are for the family court alone to decide," and the court cannot "delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment." *Nold*, 232 Ariz. at 274, ¶ 14 (quoting *DePasquale v. Superior Court*, 181 Ariz. 333, 336 (App. 1995)). Moreover, Mother attempts to draw a distinction between the experts' recommendations and the family court's order where there is no difference. Dr. Schroeckenstein recommended joint legal decision-making, with Father as the final decision-maker in the event of a conflict and Mother given the ability to seek judicial review. Dr. Yee likewise recommended the presumptive decision-making model. And this is precisely what the court ordered. *See supra* ¶¶ 5, 9. Although the court used the term "sole legal decision-making," "[c]ourts are not bound by labels." *See Anderson v. Valley Union High Sch., Dist. No. 22*, 229 Ariz. 52, 55, ¶ 4 (App. 2012) (citing *State v.*

---

[3] Absent material changes from the relevant date, we cite a statute's current version.

*Brown*, 9 Ariz. App. 323, 326 (1969)). Here, the court specifically limited Father's authority to presumptive decision-making, requiring him to communicate his decisions to Mother and consider her input, and permitting Mother to seek judicial review. Therefore, the court's order mirrors the experts' recommendations, and Mother's argument lacks a factual basis.

¶13 Mother also asserts the family court failed to make the requisite findings under A.R.S. § 25-403(A). In a contested legal decision-making case, "the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B); *see also Hurd v. Hurd*, 223 Ariz. 48, 51, ¶ 11 (App. 2009). The specific factors listed in A.R.S. § 25-403(A) aid the court in ensuring its determination of legal decision-making is in accordance with the best interests of the children. *See Hays v. Gama*, 205 Ariz. 99, 102, ¶ 18 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations.") (citations omitted). Therefore, the court abuses its discretion by failing to make the requisite findings. *Hurd*, 223 Ariz. at 51, ¶ 11 (citations omitted).

¶14 Mother's assertion is not supported by the record. The family court included detailed findings corresponding to the six factors relevant to this case and endeavored to address why the remaining factors were irrelevant. In particular, the court found the parents' post-dissolution conflict created stress and anxiety in the Children, Mother was described as lacking in affect, lethargic, and disengaged during Dr. Schroeckenstein's evaluation, and Mother had a habit of being "overly focused on Father and step-mother and put[ting] the [C]hildren in the middle" contrary to their best interests. Finally, the court observed that while Father "has attempted to co-parent with Mother," Mother "continues to fail to co-parent . . . [and] communicate in a concise and adult manner" with Father. Therefore, the court complied with A.R.S. § 25-403.

¶15 Mother further argues the decision-making order was not supported by the evidence. This Court defers to the family court's resolution of conflicting evidence and will affirm that court's ruling if substantial evidence supports it. *Hurd*, 223 Ariz. at 52, ¶ 16 ("Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it.") (citations omitted).

**¶16**       The record here reflects Mother's own expert, Dr. Schroeckenstein, expressed "concern that Mother has disregarded the [C]hildren's interests and wishes to participate in [extracurricular] activities." Dr. Schroeckenstein also found Mother created unnecessary stress in the Children regarding "the tension in Mother's relationship with Stepmother" and Mother's pushing the Children "to participate in Jewish activities," despite both Children conveying a positive relationship with their stepmother and an identification with Christianity. Dr. Schroeckenstein concluded that, because of "the parents' longstanding and recurrent challenges working together as co-parents" and "Mother's repeated patterns of inconsistent and/or delayed responsiveness to co-parenting inquiries," Father should "act as the final decision-maker." Although Mother may have testified otherwise, substantial evidence exists to support the decision-making order. Accordingly, we find no abuse of discretion.

**II.      The Family Court Did Not Err by Denying Mother Additional Parenting Time for Certain Jewish Holidays.**

**¶17**       Mother argues the family court erred by denying her request for additional parenting time for certain Jewish holidays and reducing the holiday parenting time awarded to Mother in the original decree. The court may modify a parenting time order "whenever modification would serve the best interest of the child." A.R.S. § 25-411(J). We will not disturb the court's order modifying parenting time absent an abuse of discretion. *Baker v. Meyer*, 237 Ariz. 112, 116, ¶ 10 (App. 2015) (citing *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003)). As with legal decision-making, a court abuses its discretion in a parenting time order if no reasonable evidence supports that order, *see Gutierrez*, 193 Ariz. at 348, ¶ 14 (citing *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984)), or by failing to make the requisite findings under A.R.S. § 25-403(A), *Baker*, 237 Ariz. at 116, ¶ 11 (citing *Nold*, 232 Ariz. at 273, ¶ 11).

**¶18**       In the dissolution decree, the family court awarded Mother parenting time on seven Jewish holidays and offset that time by providing Father with five additional summer-vacation days. After Father petitioned for a modification of that decree, Mother asked for parenting time on an additional fourteen Jewish holidays. In its modification order, the court allotted four days for each parent to celebrate their respective religious holidays with the Children.

**¶19**         Regarding the Children's best interests relative to the issue of holiday parenting time, the family court found both Children identify more with Christianity and did not agree with Mother's desire to increase their involvement in Judaism.  And when the court advised Mother it would "see what we can do to make that happen" if she would narrow her list of holidays to a more reasonable number, Mother refused to compromise.  The court thus found "Mother's position unreasonable," and declined to make holiday accommodations beyond the four major Jewish holidays — Passover, Rosh Hashanah, Yom Kippur, and Chanukah.

**¶20**         The family court's findings and conclusions are supported by the record.  In her evaluation, Dr. Schroeckenstein found "that both parents are supportive of the [C]hildren's exposure to and education regarding Christianity and Judaism; however, both [C]hildren expressed confusion surrounding the holiday schedule and described this confusion as negatively impacting their routines and academics."  Dr. Schroeckenstein expressed concern, apparently shared by the court, that inclusion of all the holidays Mother requested would create further confusion and disruption for the Children.  Furthermore, "Mother denied that she consistently engages in traditional ceremonies or services at the temple in honor of such holidays" that would require they be celebrated on a specific day.  On this record, the court did not abuse its discretion in its allocation of holiday parenting time.

**¶21**         Mother also takes issue with no longer having parenting time on her birthday.  Given the evidence of the parties' tumultuous history and difficulty communicating, and Dr. Yee's conclusion that the Children "would benefit from simplification of the parenting plan wherever possible," we find no abuse of discretion in this modification.

## CONCLUSION

**¶22**         For the foregoing reasons, the family court's orders are affirmed.

**¶23**         Both parents request an award of attorneys' fees on appeal pursuant to A.R.S. § 25-324.  Mother bases her request on Father's greater income.  *See* A.R.S. § 25-324(A) (permitting an award of fees "after considering the financial resources of both parties").  Because the record does not contain timely financial information with which to compare the parties' incomes, Mother's request is denied.

¶24 Father argues an award of attorneys' fees in his favor is mandatory because Mother's appeal was not "filed in good faith" or "grounded in fact or based on law." *See* A.R.S. § 25-324(B)(1)-(2). We agree. Father is therefore awarded his reasonable costs and attorneys' fees upon compliance with ARCAP 21(b).



AMY M. WOOD • Clerk of the Court
FILED: AA