NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CHRISTOPHER RATLIFF, *Petitioner/Appellee,*

*v.*

TAHNEE BILLINGSLEY, *Respondent/Appellant.*

No. 1 CA-CV 20-0204
FILED 3-4-2021

Appeal from the Superior Court in Mohave County
No. B8015DO201604363
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Christopher Ratliff, Mohave Valley
*Petitioner/Appellee*

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**H O W E**, Judge:

¶1     Appellant, Tahnee Billingsley ("Mother"), appeals the superior court's decision denying her request to relocate B.R., a minor child, from Fort Mohave, Arizona, to Phoenix, Arizona. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2     We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother and Christopher Ratliff ("Father") are B.R.'s parents and were never married. When B.R. was first born, Mother and Father lived together in Winslow, Arizona, while Father worked for BNSF. When B.R. was one year old, Mother and Father moved to Mohave County because Father was frequently away from the family for work and the couple hoped the move would facilitate more time together. The relationship eventually dwindled, and Mother moved with B.R. into a family home in Maricopa County in 2016. In 2016 Father petitioned the court to establish paternity, legal decision-making, parenting time, and child support.

¶3     About a year later, Mother moved back to Mohave County to reunite the family and worked full-time as a certified nursing assistant. In the summer of 2018, Mother's employment was reduced to part-time, and she could no longer pay her rent. Even though Father paid Mother's rent for September, having co-signed the apartment's lease, Mother moved to her grandfather's house in Phoenix and took B.R. with her. Father objected to the move and petitioned the court to modify legal decision-making, parenting time, and child support. Mother then formally petitioned the court for relocation. At the time of Mother's relocation, the parents shared joint legal decision-making and followed a 3/4/4/3 parenting schedule. Both parents claimed that the 3/4/4/3 parenting schedule was unworkable after Mother's relocation and requested that B.R. live primarily with them, the other parent getting long-distance parenting time only.

¶4        The court heard testimony from Father, Father's wife, Mother's sister, and Mother. Father testified that B.R. has had a great bond with both himself and Mother. B.R. had excelled in school at Fort Mohave, had enjoyed extra-curricular activities like baseball and motocross, and had a great relationship with his stepbrother, stepsister, and stepmother, treating stepmother as a parent equal to Father. While Father was occasionally at work on the railroad for days at a time, he scheduled to work when he did not have parenting time with B.R.

¶5        B.R.'s aunt testified that B.R. had cousins and other extended family in Phoenix and had bonded with them. She admitted, however, that B.R. had lived primarily in Mohave County and that disrupting the familial life established in Mohave County would make him unhappy. She also testified that B.R.'s Mother inquired about schools for B.R., but she did not know if Mother had discussed the options with Father or if B.R. had been enrolled before the relocation.

¶6        Mother testified that she primarily took care of B.R. for the first two years of his life since she was a stay-at-home mother at that time. Since then, Mother and Father have had split parenting time. Mother testified that Maricopa County would provide greater academic opportunity to B.R. but did not say what schools she had considered and discussed with Father before relocation. Mother also testified that on multiple occasions Father had threatened to call the police when they disagreed on the interpretation of the parenting plan. Mother opined that communication with Father had deteriorated once Father married. Mother admitted, however, that Father had complied with mediation and had consistently agreed to work with her to make sure each parent got time with B.R.

¶7        The court found that while Mother was the primary caregiver during the first two years of B.R.'s life, Father and Mother had roughly shared parenting time together. Second, while Father and Mother's communication had deteriorated, they continued to go to mediation and consistently came to agreements about B.R.'s parenting and parenting time. It also found that the sibling and familial relationships that B.R. had formed over his years from both sides of the family were equally important and favored neither Mother's relocation nor deterred it. It found, however, that because B.R. had lived primarily in Mohave County, a move would disrupt B.R.'s communal life, a deterrent to relocation. The court also found that Mother provided insufficient evidence that a move to Maricopa County would better facilitate B.R.'s communal life. Finally, while Mother testified that Father had been absent at work for the first few years of B.R.'s life, the

court found that Father had modified his schedule and had been primarily present during his parenting time.

¶8         The court concluded "Mother has not met her burden of showing that relocating [B.R.] with her in Maricopa County is in his best interests." The court then ordered that Father be B.R.'s primary residential parent but maintained that both shall have joint legal decision-making authority. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. § 12–120.21(A)(1).

**DISCUSSION**

¶9         Mother appeals the trial court's determination that she failed to meet her burden of proof that relocation is in B.R.'s best interests. This court reviews decisions regarding child custody and relocation for an abuse of discretion. *Owen v. Blackhawk*, 206 Ariz. 418, 420 ¶ 7 (App. 2003). We accept the juvenile court's factual findings unless no reasonable evidence supports them and will affirm unless clearly erroneous. *See Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 508 ¶ 1 (App. 2008). The evidence is viewed in a light most favorable to upholding the court's findings since "the family court is in the best position to judge the credibility of witnesses and resolve conflicting evidence, and appellate courts generally defer to the findings of the family court." *Vincent v. Nelson*, 238 Ariz. 150, 155 ¶¶ 17, 18 (App. 2015).

¶10         In its ruling, the court must make specific findings on the record as to all relevant factors and the reasons its decision is in the child's best interests. A.R.S. § 25–403(B); *see also Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 20 (App. 2009); *Owen v. Blackhawk*, 206 Ariz. 418, 421 ¶ 9 (App. 2003). The parent requesting the relocation carries the burden to show that relocation is in the child's best interests. A.R.S. § 25–408(G).

¶11         Section 25–403(A) requires a court to consider certain factors "relevant to the child's physical and emotional well-being" when evaluating the child's best interests for purposes of legal decision-making and parenting time. A.R.S. §§ 25–403(A), (B); *see also Layne v. LaBianca in & for Cty. of Maricopa*, 249 Ariz. 301, 302 ¶ 6 (App. 2020). The relocation statute, A.R.S. § 25–408, requires a court to consider the § 25–403 factors as well as additional factors specific to whether relocation is in the child's best interests. A.R.S. § 25–408(I).

¶12         The court found that most of the A.R.S. § 25–408(I) and A.R.S. § 25–403(A) factors neither applied to the family nor favored or deterred relocation. The court found persuasive that B.R. was closely bonded with

Father, stepmother, and their family and that B.R. had spent, roughly, equal time with Father and Mother. While the court recognized occasional disagreement and lack of cooperation between Mother and Father, it concluded that both Mother and Father had worked with the other parent to allow frequent, meaningful parenting time with the other parent and that they would continue to do so in the future.

¶13 It found, however, that B.R. had established connections through school and extra-curricular activities in Mohave County and that it would not be good for him to move out of Mohave County. The court further found that Mother had failed to show how a move to Maricopa County would increase B.R.'s particular academic and extra-curricular opportunities beyond introducing B.R. to a bigger metropolitan area. After weighing relocation's detrimental effects and Mother's failure to show how Maricopa County offered more particularized benefits to B.R., the court concluded that Mother had failed to meet her burden of proof that moving B.R. to Maricopa County was in B.R.'s best interests. Substantial evidence supports the trial court's conclusion and there was no error.

¶14 Mother argues, however, that the trial court "disregarded" her testimony and exhibits relating to historical parenting time, familial attachment, Maricopa County's benefits to B.R., and Father's deteriorating communication with Mother. Contrary to Mother's position, the court addressed these issues in its ruling. Mother, thus, requests this court to reweigh the evidence on appeal, which we will not do. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002); *see also Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009).

## CONCLUSION

¶15 For the reasons stated, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:
AA