NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ERIC CAMPBELL, *Petitioner/Appellant*,

*v.*

RACHEL ANN NEWELL, *Respondent/Appellee*.

No. 1 CA-CV 24-0042 FC

FILED 09-26-2024

Appeal from the Superior Court in Maricopa County
No. FC2016-090785
The Honorable Keith A. Miller, Judge

**AFFIRMED**

COUNSEL

Scott Patterson PLLC, Tempe
By Scott L. Patterson
*Counsel for Petitioner/Appellant*

Rachel Ann Newell
*Respondent/Appellee*.

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

---

**H O W E**, Judge:

¶1        Eric Campbell ("Father") appeals from an order modifying the previous legal decision-making authority order in favor of Rachel Newell ("Mother"). Finding no abuse of discretion, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The parties have one child "Leila" (a pseudonym), born in 2013. Leila has significant behavioral issues and has an individualized education plan ("IEP") at her school. She does not have any formal medical diagnosis, but several treating physicians have suggested that she has ADHD. Because of her behavior, she is in a general education classroom for approximately 80% of the day, and the remaining time she spends in special smaller classroom settings. Leila is intelligent but often is unable to regulate her emotions and physically lashes out at her teachers and peers. She sees a therapist on a regular basis.

¶3        In 2016, Father filed for divorce. In its judgment dissolving the marriage, the superior court awarded both parties joint legal decision-making authority. In 2019, Father petitioned to modify legal decision-making authority. He sought sole legal decision-making authority over Leila's medical and educational decisions because he alleged that Mother refused to co-parent with him and that the parties disagreed about the medical and education plans necessary to address Leila's behavioral issues. Mother in turn sought joint legal decision-making with final decision-making authority.

¶4        The court found that a substantial change in circumstances had occurred because the parties were unable to reach agreements on the proper medical and educational course necessary to treat Leila's behavioral issues. The court awarded Father final decision-making authority because it found that Father was more open to considering Mother's input when making decisions for Leila.

¶5          After the order, the parties continued to have frequent disputes about Leila's education and medical needs. Leila went several months with untreated cavities because the parties could not agree on a dentist. Father used his final decision-making authority over Mother's objections in many instances, including (1) choosing a dentist, (2) vaccinating Leila against Covid-19, and (3) continuing to send Leila to a therapist with whom Mother disagreed. During their disputes, Father often was dismissive or used disparaging language in his communications. When Mother objected to vaccinating Leila against Covid-19, Father responded by implying Mother's medical views were responsible for the recent death of her daughter from another relationship who suffered from a childhood illness. Father also would often not respond within 24 hours despite the 2019 order's requirement to do so. He scheduled meetings involving Leila and submitted a school program application without first seeking Mother's input.

¶6          In 2023, Mother petitioned to modify the 2019 order. She sought final authority to make educational and medical decisions for Leila when the parties could not agree. She alleged that Father "engaged in acts that discredit any form of decision-making authority to Mother," including switching Leila's dentist and scheduling appointments without her input, engaging in "verbally abusive" communications, and consistently making decisions Mother objected to. At trial, the parties principally disputed whether Leila should continue at her current school or move to a more restrictive environment and whether Leila should continue seeing her current therapist.

¶7          The court awarded Mother final decision-making authority when the parties could not reach an agreement after a "good faith effort." The court did not issue stand-alone change-in-circumstances findings. Rather, the court first found under A.R.S. § 25-403.01(B)(1) as to "[t]he agreement or lack of an agreement by the parents regarding joint legal decision-making" that "Father's utilization of final-say legal decision-making has been unreasonable." The court further found under A.R.S. § 25-403.01(B)(3) as to ability of the parents to cooperate in decision-making that "[t]he parties have a long history of difficulty in cooperating in legal decision making."

¶8          Then in its best-interests findings under A.R.S. § 25-403(A)(1) for the relationship between parents and child, the court found that "Father's derogatory communication is so significant that it justifies this Court's modification of legal decision-making." Specifically, the court found that "[t]he intervening four years [since the 2019 order] have not

3

resulted in any appreciable improvement in the parties' ability to communicate. And the evidence presented at trial shows Father repeatedly degrading Mother and her parenting abilities and giving no degree of deference to Mother's opinions on medical care and educational decisions." Under the same factor, the court also found that both parties have close relationships with Leila.

**¶9** On the other best-interests factors, the court found that either the evidence did not support the factors or the factors were positive or neutral as to both parties. As relevant, the court found under A.R.S. § 25-403(A)(3) that the parties disagreed whether Leila should continue at her school and that "testimony at trial indicated that she is not improving there as much as anyone would like." The court also found under A.R.S. § 25-403(A)(5) that Leila "has been diagnosed with Generalized Anxiety Disorder and Attention Deficit Hyper Activity Disorder. Her issues have contributed to a significant period of time at her school in a special needs room." But the court did not find mental or physical health concerns for either parent under the same factor. The court did not make any findings about specific educational or medical decisions but found "based upon [all of] the above, it is in the child's best interest that [the parties] be awarded joint legal decision-making authority."

**¶10** The court certified its order as a final judgment pursuant to Arizona Rule of Family Law Procedure 78(c). Father timely appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1).

## DISCUSSION

**¶11** When considering a petition to modify legal decision-making authority, the superior court first considers "whether there has been a change of circumstances materially affecting the welfare of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343 ¶ 14 (App. 2020) (quoting *Black v. Black*, 114 Ariz. 282, 283 (1977)). If the court finds a change in circumstances, it may then consider whether a modification is in the child's best interests by applying the factors in A.R.S. § 25-403(A). *Id.* The party seeking a modification has the burden of proof. *Id.* The court has "broad discretion to decide whether a change of circumstances has occurred." *Id.* We will affirm the court's legal decision-making order absent an abuse of discretion. *Id.* An abuse of discretion exists when the trial court makes an error of law, *State v. Bernstein*, 237 Ariz. 226, 228 ¶ 9 (2015), or when "the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision," *Little v. Little*, 193 Ariz. 518, 520 ¶ 5 (1999) (citation omitted).

I. **Change in Circumstances.**

¶12 Father argues that circumstances have not changed since the 2019 order to justify the 2023 order. Specifically, Father argues (1) the parties continue to have disputes regarding parenting decisions and difficulty communicating, (2) Leila continues to have significant behavioral issues, and (3) Leila continues to receive the same services.

¶13 Father implies that to find a change in circumstances, the court must find that all circumstances have changed. But the court need determine only that "there has been a change of circumstances materially affecting the welfare of the child." *Backstrand*, 250 Ariz. at 343 ¶ 14.

¶14 Evidence supports the court's finding that Father has unreasonably failed to take Mother's input into account when making decisions about Leila and communicated with Mother derogatorily. *See* A.R.S. § 25-403.01(B)(1), (2) (the court must consider whether the parents agree to joint legal decision-making and whether any lack of agreement is unreasonable), (3) (the parties' history and future ability to cooperate). When Mother expressed concerns about vaccinating Leila against Covid-19, Father responded by implying she was responsible for the death of her other daughter who had recently died from medical complications. Father also scheduled a meeting with Leila's therapist to create a new treatment plan on a day Mother could not attend and submitted a school program application without first notifying Mother. Father would often take over a day to respond in violation of the 2019 order's instruction to respond within 24 hours.

¶15 Father's dismissive and inappropriate communications with Mother constitute a change in circumstances. When a court orders joint legal-decision making with one party having final authority, the court obliges both parties to engage in good-faith consultation. *Nicaise v. Sundaram*, 245 Ariz. 566, 568–69 ¶¶ 14–15 (2019). Because of this obligation, final decision-making authority is not sole legal decision-making authority. *Id.*; *see Adkisson v. Keith*, 1 CA-CV 20-0193 FC, 2021 WL 248168, at *3 ¶ 14 (Ariz. App. Jan. 26, 2021) (mem. decision) ("[G]ranting tie-breaking authority does not transform a joint decision-making order into a sole decision-making order."). Indeed, when the court awarded Father final decision-making authority in 2019, the court ordered that each party "shall give good faith consideration to the views of the other and put forth best efforts to reach a consensus decision" and engage in "reasonable consultation." Father implies that if he was not giving good-faith consideration to Mother's views before the 2019 order, then his current lack

of consideration for Mother's views does not constitute a change in circumstances. But Father's contention would effectively eliminate the 2019 order's good-faith requirement. In other words, the 2019 order presumes as a baseline that the parties will engage in good-faith discussions or reasonable consultation.

¶16 Further, to award both parties joint legal decision-making authority, the court must consider whether the parties agree and, if they do not, whether the lack of an agreement is unreasonable. *See* A.R.S. § 25-403.01(B)(1), (2). The court must also take into account the parties' ability to cooperate. *See* A.R.S. § 25-403.01(B)(3). Here the court found both that Father's lack of agreement on decisions about Leila was unreasonable and that Father and Mother have a history of difficult cooperation. Thus, notwithstanding Father's long history of conflict with Mother, A.R.S. § 25-403.01(B) affords the court discretion to find that a party's unreasonableness and difficulty in cooperating on legal decision-making constitute a change in circumstances.

¶17 Finally, a failure to engage in good-faith discussions or reasonable consultation is a circumstance materially affecting Leila's welfare. When a court determines legal decision-making authority, the court can order either joint legal decision-making or sole legal decision-making. A.R.S. § 25-403.01(A). By disregarding Mother's opinions, Father has effectively converted his final decision-making authority into sole decision-making authority. As discussed, Father and Mother disagree on important aspects of Leila's educational and medical needs, *see supra* ¶ 6. Father has exercised his final authority to choose Leila's dentist and therapist as well as vaccinate her. These are all decisions that materially affect her welfare.

¶18 The court did not abuse its discretion in finding a change in circumstances materially affecting the welfare of Leila.

## II. Best Interests.

¶19 Father argues the superior court did not make sufficient best-interests findings to change the parties' legal decision-making authority. "In a contested legal decision-making . . . case, the court shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B). Father argues that the court did not (1) sufficiently describe Leila's relationship with her parents under A.R.S. § 25-403(A)(1); (2) make findings on Leila's relationships with siblings and other significant persons under A.R.S. § 25-

403(A)(2); (3) include any findings about Leila's adjustment to either party's home, her school, or either party's community under A.R.S. § 25-403(A)(3); and (4) fully appreciate the extent of her "emotional disabilities" under A.R.S. § 25-403(A)(5).

**¶20** Father further argues that the court did not consider all the evidence but focused on a handful of disrespectful messages he sent to Mother to the exclusion both of hundreds of other non-disrespectful messages he sent. He argues that the court erred in focusing on his degrading messages because Mother has the burden of proof and the court must deny the petition if it did not consider all the factors or was not presented with evidence on a statutory factor. He contends that the court did not explain how its findings concerning his inappropriate communications with Mother relate to Leila's best interests. Finally, Father argues the court's findings were insufficient because *Owen v. Blackhawk*, 206 Ariz. 418 (App. 2003) required the court to issue detailed findings about each statutory factor. Taken together, Father implies that the court was required to, but did not, issue findings and orders on what educational and medical interventions are in Leila's best interests.

**¶21** But the parties did not ask the court to determine Leila's best interests as to *particular decisions*. Mother petitioned to change legal decision-making authority; she did not come to court to challenge a particular decision that Father made. Further, Mother did not seek sole legal decision-making authority but rather joint but final decision-making authority. Thus, the parties sought that the court determine which party is *more capable* of exercising legal decision-making authority in a way that serves Leila's best interests.

**¶22** Here, the court made specific findings on the record about all the relevant statutory factors. *See* A.R.S. § 25-403(B). Although Father argues the court did not make sufficient findings because it failed to consider various evidence, we presume the court considered all admitted evidence before issuing a decision. *Fuentes v. Fuentes*, 209 Ariz. 51, 55 ¶ 18 (App. 2004). The court does not have to refer to each piece of evidence that supports its ruling. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52 ¶ 19 (App. 2007). It must include "the 'ultimate' facts — that is, those necessary to resolve the disputed issues." *Elliott v. Elliott*, 165 Ariz. 128, 132 (App. 1990). But the court need not detail the evidentiary basis on which the ultimate fact was based. *Christy C.*, 214 Ariz. at 451–52 ¶ 19. Thus, the court did not need to make best-interests findings on each educational and medical decision. The court needed to determine only if both parents are

capable of exercising legal decision-making authority and who, if either, should exercise final decision-making authority.

¶23 The court found that both parties have a close relationship with Leila and that neither party has any mental or physical health issues, neither of which Father disputes. *See* A.R.S. § 25-403(A)(1), (5). Thus, the court could conclude that both parties are capable of legal decision-making. *See* A.R.S. § 25-103(B)(2)25-103(B)(2) ("[A]bsent evidence to the contrary, it is in a child's best interest: [t]o have both parents participate in decision-making about the child."). Although the parties disputed many aspects of Leila's upbringing, the court heard Mother testify about all issues, including Father's lack of consideration for her views. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019) (noting we do not reweigh the evidence or judge witness credibility on appeal); *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009) (noting the appellate court will affirm the superior court's ruling if substantial evidence supports it, even if conflicting evidence exists). The court then found under A.R.S. § 25-403.01(B)(1) and (3) that the parties have a long history of difficult cooperation on legal decision-making and that Father's lack of agreement has been unreasonable. The court also found under A.R.S. § 25-403(A) that Father is incapable of respectfully considering Mother's views. The court's findings about Father's unreasonableness and lack of respect for Mother's views directly relate to A.R.S. § 25-403.01(B)(2), (3). Thus, although the superior court should have placed its findings about the nature of the parents' relationship under -403.01(B)(2) and (B)(3) instead of under -25-403(A)(1), those findings support modification.

¶24 Finally, *Owen* is distinguishable from this case. In *Owen*, the court did not make findings on all the factors, and the factors the court did make findings on did not weigh in favor of either parent. 206 Ariz. at 421 ¶ 12. Here, the court's findings made clear that, while some factors were neutral, A.R.S. §§ 25-403(A)(1), 25-403.01(B) strongly weighed in Mother's favor because Mother, but not Father, is more likely to take the other party's input into account. The court's factual findings were sufficient.

## III.  Constructive Sanction.

¶25 Father also argues that the court improperly modified the legal decision-making order as a sanction against Father because it found that Father had "degraded Mother and her parenting abilities and had given no degree of deference to Mother's opinions on medical care and educational decisions." Specifically, Father argues the order "violates *Hays*

*v. Gama* because the court imposed a constructed sanction on Father that will have a significant impact on the child."

¶26 But *Hays v. Gama*, 205 Ariz. 99 (2003) is not relevant because the court did not sanction Father. *Hays* addressed a dissolution proceeding in which the father moved for sanctions against the mother for violating a court order and the court granted sanctions against the mother under its inherent contempt power. *Id.* at 99, 100–102 ¶¶ 1, 7–8, 17. Those sanctions included an award of attorney fees and the exclusion of a witness, among others. *Id.* at 101 ¶¶ 9–10. Here, neither Mother requested nor did the court sua sponte order sanctions against Father. Father does not cite any caselaw supporting the existence of a "constructed sanction." Essentially, Father does not believe the court acted in Leila's best interests by finding that his "derogatory communication is so significant that it justifies [the modification]." But Father's disagreement with the court's analysis and attempt to divine its intent does not convert its order into a sanction. The court did not err.

## IV. Costs on Appeal.

¶27 As the successful party on appeal, Mother is entitled to an award of her costs under A.R.S. § 12-342 upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶28 We affirm.

